### THE ANNEX No. 3.[1]

#### HOGG v. THE PENNSYLVANIA ANNEX No. 3.

*(District Court, E. D. New York. February 27, 1886.)*

COLLISION—FOG—IDENTITY OF COLLIDING VESSEL—ALIBI.
  On the evening of February 6, 1884, a vessel collided with the steamer Western Texas, which was lying at Pier 9, East river; but, owing to the darkness and a thick fog which prevailed at the time, it was impossible to distinguish clearly the boat which did the damage. At about that time, on the same evening, the Pennsylvania Annex No. 3, on her way from Brooklyn to Jersey City, was in collision with some object in the vicinity of Pier 9. Suit was brought against Annex No. 3 for the damage sustained by the Western Texas. The claimants denied the identity of the colliding vessel with the Annex boat. *Held,* on the evidence, that the libelant had not proved that the damage in question was done by Annex No. 3, and that the libel should be dismissed.

In Admiralty.
*Evarts, Choate & Beaman, (Treadwell Cleveland,)* for libelant.
*Goodrich, Deady & Goodrich,* for claimant.

BENEDICT, J. This action is to recover of the ferry-boat Annex No. 3 the damages sustained by the steamer Western Texas by being run into on the evening of February 6, 1885, while lying along-side Pier 9, in the East river. At the time this damage was done to the West-

ern Texas a fog of extraordinary density was prevailing, and the only question at issue is whether the boat Annex No. 3, here proceeded against, was the boat by which the damage in question was done. Over this question the contest has been severe, and a large amount of testimony has been taken. I have given this testimony a careful examination, aided by elaborate briefs from the advocates, and my conclusion is that the libelant has not proved that the damage in question was done by Annex No. 3. My view respecting some of the positions taken in behalf of the libelant may be stated.

It being conceded that in this same fog Annex No. 3 made a trip from Brooklyn to Jersey City, and during the trip came in contact with something, within a short distance of the place where the Western Texas lay when struck, it is claimed to be a singular coincidence that two vessels, bound down the East river, at nearly the same time, brought up on the New York shore at nearly the same place. I see nothing so very singular in such a coincidence. There would be nothing unusual in two or more ferry-boats, even, passing down the East river at nearly the same time, and nothing strange if, in such a fog, more than one of them should bring up in the locality where the Western Texas was moored. Unless several persons who were passengers on the Annex No. 3 on the trip she made, who have no interest in the controversy, have sought to mislead the court as to what occurred on the trip, it seems impossible that such a blow as was received by the Western Texas was delivered by Annex No. 3 during that trip. Every passenger called, save one called by the libelant,—as to whose veracity there is cause for doubt,—testifies that the touch of Annex No. 3 upon what she struck was altogether too light to do damage, and there is testimony going to prove, as a fact, that what Annex No. 3 touched was a pier.

Great reliance is placed by the libelant upon the testimony of two witnesses who were upon the schooner Jordan L. Mott, a vessel lying in the same slip with the Western Texas at the time she was damaged, and who saw the boat that did the damage. But these witnesses testify to seeing more than I think it possible for them to have seen, considering their position and the density of the fog. It is difficult to understand how there could have been any collision at all if it were possible to see as well as these witnesses say they saw. Besides, one of them says that pieces of wood were knocked off the boat that ran into the Western Texas, fell into the water, and he vainly endeavored to secure one of them. No pieces of wood were broken off Annex No. 3, as is plainly proved.

Again, it is argued, from the strength of the tide and the testimony of those on Annex No. 3 respecting her speed, and an estimate of her weight, that she would have delivered a blow of 8,000 tons weight. If this be so, it seems to my mind impossible that Annex No. 3 could have delivered a blow upon the rigid iron side of the Western Texas, lying along-aside a pier, not only without injury to her-

self, but also leaving her bow free from any marks indicating that she had been in collision. I gain no light upon the question at issue from the testimony respecting the direction of the blow received by the Western Texas, nor from the testimony showing want of anxiety on the part of those on Annex No. 3 to learn what object she came in contact with, nor from the shreds picked from the broken plate of the Western Texas.

The testimony respecting the hail from the Western Texas, and the lights seen on the boat that did the damage, makes against the libelant, as it seems to me. The testimony raises a doubt in my mind whether the boat that struck the Western Texas had the iron folding barrier which is upon the Annex No. 3, although there is no doubt that there was some sort of fence upon her.

There remains to allude to what should, I think, be considered decisive of the case, namely, the record of the ferry-boat's time of departure from Brooklyn, and her arrival at Jersey City, on the trip when it is claimed by the libelant that she ran into the Western Texas. Such records were kept at both places in the regular course of the business of the ferry. They are produced by the claimant, to show—as they do show—that Annex No. 3 was not in the neighborhood of the Western Texas at the time she received the damage in question. These records, as they stand, are conclusive against the libelant. But these records are challenged by the libelant. The one showing the time of departure it is insisted has been altered in the figures; the other, showing the time of arrival, it is insisted has been fabricated for the purposes of this suit.

The charge that the figures showing the time of the boat's departure from Brooklyn have been tampered with has for its basis an apparent alteration in a figure in the entry of the time of the departure. But alterations in other figures are apparent elsewhere in the record, and a change of a figure in an entry of this character may easily occur, and is not, by itself, sufficient to prove a fraudulent intent to falsify the record. The effort to conceal the change of the figure, which is greatly relied upon as being proved by the paper itself, is not apparent to me. I see no material difference between this entry and other entries in the same record, where there is no reason to doubt that the figure was changed, at the time of making the entry, to make the entry correspond with the facts.

The charge that the record of the boat's arrival in Jersey City on each trip is a fabrication has for its basis the fact that the edges of that one of the sheets produced which contains the record of the day in question show a green stain, such as would appear on a sheet that had been once bound in a book, and there are indications that the sheet in question had been trimmed, whereas the records at Jersey City were kept on loose sheets, and not bound in a book, while the records kept in Brooklyn only were bound in a book. Here the difficulty is that other sheets of the records kept at Jersey City, hav-

ing no bearing whatever on this controversy, and which, as produced, could not have been substituted for the purpose of affecting the present suit, are similar to the sheet in dispute. In the March records there are three such sheets. Undoubtedly the peculiarity in the disputed sheet entitled the libelant to require positive proof of its genuineness and accuracy. That proof has been furnished by the testimony of those who made the entries and produced the sheets, and evidence has also been furnished from the office where the blank sheets were printed, tending to show how sheets like this might be produced without ever having been bound in a book, although, of course, there is no evidence from the printer in regard to these particular sheets.

Notwithstanding, therefore, the bold assertion that these sheets convict the claimants of endeavoring to escape liability in this action by "fraud, perjury, and forgery," I am of the contrary opinion. To my mind, these sheets alone prove that the libelant has mistaken the vessel to proceed against, and compel a decision of this case adverse to the libelant.